Filed 3/13/23  P. v Lucero CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN LUCERO,<br><br>    Defendant and Appellant. | B317506<br><br>(Los Angeles County<br>Super. Ct. No. KA056248) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Christian R. Gullon, Judge. Affirmed.

Robert E. Myers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Steven D. Matthews, Supervising Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Juan Lucero pleaded guilty pursuant to a negotiated agreement in 2003 to one count of possession of a controlled substance for sale pursuant to Health and Safety Code section 11351 and was sentenced to three years of probation on condition he serve 90 days in county jail.[1]  On July 30, 2021 Lucero moved pursuant to Penal Code section 1473.7 (section 1473.7) to vacate his conviction on the ground prejudicial error damaged his ability to meaningfully understand the potential adverse immigration consequences of his plea.  The superior court denied the motion after an evidentiary hearing, finding no credible evidence Lucero would have rejected the proposed plea agreement to avoid possible immigration consequences.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *Lucero's Plea and Conviction*

Lucero was charged in a one-count criminal complaint in March 2002 with possession of a controlled substance in violation of Health and Safety Code section 11351 (unlawful possession for sale)—an offense then punishable by two, three or four years in state prison.  (See Stats. 2000, ch. 8, § 4.)[2]  On January 3, 2003, pursuant to an agreement negotiated prior to a preliminary

———————————————

[1]   In May 2021 Lucero was permitted to withdraw his guilty plea, and the charge against him was dismissed pursuant to Penal Code section 1203.4.

[2]   The sentence of two, three or four years for violation of Health and Safety Code section 11351 may now be served in a county jail pursuant the Penal Code section 1170, subdivision (h), part of the Criminal Justice Realignment Act of 2011.

2

hearing, Lucero entered a plea of guilty to the charge and was sentenced to three years' probation on condition he serve 90 days in county jail, with 33 days of custody credit.

The written plea agreement signed and initialed by Lucero, which indicated the maximum term for the offense was four years, stated, "I understand if I am not a citizen of the United States, the conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States." In addition to initialing the immigration advisement, Lucero initialed the boxes next to the statements that he was "pleading guilty to take advantage of a plea bargain" and had "discussed the charge(s), the facts and the possible defenses with my attorney."

At the outset of the hearing on Lucero's section 1473.7 motion, the court stated, "The plea transcript indicates that Mr. Lucero, while using the services of an interpreter, was asked about his plea form and whether the interpreter translated the form, whether he understood what his lawyer and the interpreter told him about the form, whether he placed the initials in the boxes on the form, and whether he signed the form. And then, orally, he was admonished [at] page five, starting at line one, by the prosecutor, of the immigration consequences, through line seven."[3]

---

[3] The record on appeal does not contain the transcript of the plea hearing. A reporter's affidavit included with the record indicated the notes were destroyed and stated a transcript could not be prepared. The Attorney General in his respondent's brief explained that the effort to locate a copy of the transcript has been unsuccessful.

The minute order from the January 3, 2003 hearing confirmed that Lucero was advised of, and personally and explicitly waived, his constitutional rights and acknowledged the effects of his conviction and probation before entering his plea, including, "If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

2. *Lucero's Motion To Vacate His Conviction*

Lucero, represented by counsel, filed a motion to vacate his conviction pursuant to section 1473.7 on July 30, 2021. In the one-page declaration filed with the motion, Lucero stated he was born in Durango, Mexico in August 1977 and moved to the United States in early 1994 when he was 17 years old. Lucero married in 2013; he and his wife have four children. He stated he considered the United States his home since arriving here and always intended to become a citizen one day.

With respect to his plea, Lucero declared his counsel never advised him of any immigration consequences. Counsel recommended he accept the plea agreement because three grams of cocaine had been found in his jacket pocket after he was pulled over for speeding.

4

The People filed no response to Lucero's motion.

Testifying at the November 29, 2021 hearing on his motion with the assistance of a Spanish-language interpreter, Lucero initially said his appointed counsel "told me to accept the charges that were filed against me because, if I was going to fight the charges, I was going to need a public defender," but then said his counsel (a public defender) told him, if he did not want to take the deal, "I would not need a public defender, but an attorney that I would have to pay for myself." Asked if he remembered his counsel advising him of any adverse plea consequences that would result from his plea, Lucero said, "I do remember his words, but I don't remember that he—I don't remember him letting me know about the consequences with immigration." He then confirmed he had signed the form waiving his rights and containing the immigration advisement.[4] Lucero did not testify (and did not assert in his declaration) that he did not understand his guilty plea would affect his immigration status or claim he would not have accepted the plea agreement and entered a guilty plea if he had understood the immigration consequences of doing so.

The superior court denied the motion, explaining, "I don't have any evidence before me that is credible that he would not have otherwise gone forward with the plea based on his immigration issues. . . . Sounds like he did it because he knew he had the drugs, and this was the best deal, and he didn't want to deal with hiring a lawyer if that was going to be the case. I don't know what his wherewithal would have been at the time. Perhaps he was advised that he would have a lawyer while he

---

[4] There was no cross-examination by the prosecutor.

was in custody, but if he got released, he would have the wherewithal to hire his own lawyer. I don't know. But it sounds like there [were] a lot of things other than immigration as being the ones that he was taking into consideration. And there is no statement, even now, indicating that, had he understood that he was—although it was explained to him both in writing with the use of an interpreter on the form and directly orally during the taking of the plea—that he would not have taken the deal, instead fighting tooth and nail, even though it looks like they caught him red-handed, in order to possibly avoid immigration consequences."

Lucero filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 1473.7, subdivision (a)(1), authorizes a person who is no longer in criminal custody to move to vacate a conviction or sentence on the ground it is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (See *People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*); *People v. Lopez* (2022) 83 Cal.App.5th 698, 709.) Effective January 1, 2019 the statute was amended to provide "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (See Stats. 2018, ch. 825, § 2.) "Thus, although the motion to vacate is fundamentally based on errors by counsel, the moving party need not demonstrate that 'counsel's representation fell below an objective standard of reasonableness' 'under prevailing

6

professional norms.'" (*Lopez*, at 709; accord, *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 904.)

"A successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the actual or potential immigration consequences of a plea." (*People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*); accord, *Espinoza*, *supra*, 14 Cal.5th at p. 319; see § 1473.7, subd. (e)(1) ["[t]he court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)"].) "What someone seeking to withdraw a plea under section 1473.7 must show is more than merely an error 'damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the plea. [Citation.] The error must also be 'prejudicial.'" (*Vivar,* at p. 528.) "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, at p. 529; accord, *Espinoza*, at p. 319; *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1003 ["[a] defendant requesting relief under section 1473.7 bears the burden of establishing by a preponderance of evidence that there is a reasonable probability that he or she would not have entered into the plea agreement if he or she had meaningfully understood the associated adverse immigration consequences"].)

"When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the

7

circumstances.  [Citation.]  Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supr*a, 11 Cal.5th at pp. 529-530; see *People v. Manzanilla*, *supra*, 80 Cal.App.5th at p. 912; *People v. Mejia* (2019) 36 Cal.App.5th 859, 866 ["[t]he key to the statute is the mindset of the defendant . . . at the time the plea was taken"].)  "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Espinoza*, *supra*, 14 Cal.5th at p. 320.)

We review rulings under section 1473.7 independently. (*Espinoza*, *supra*, 14 Cal.5th at p. 319; *Vivar, supra*, 11 Cal.5th at p. 524.)  "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]  When courts engage in independent review, they should be mindful that "'[i]ndependent review is *not* the equivalent of de novo review . . . .'"  [Citation.]  An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. . . .  In section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar*, at pp. 527-528.)  "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id.* at p. 528.)

2. *Lucero Failed To Establish Prejudicial Error Affecting His Ability To Understand the Immigration Consequences of His Guilty Plea*

A moving party, like Lucero, who pleaded guilty to a felony must prove three elements to establish his or her entitlement to relief under section 1473.7, subdivision (a)(1):  (1) He or she was not given accurate advice about the immigration consequences of the plea.  (2) As a result, he or she did not understand the actual or potential immigration consequences of the decisions being made.  (3) If he or she had properly understood those consequences, there is a reasonable probability he or she would not have accepted the proposed plea agreement.  Even if we were to agree that Lucero established the first two elements, he failed to present any evidence to support a finding in his favor on the remaining one.

a. *Were accurate advisements given?*

Lucero argues on appeal (albeit without citation to authority), and the Attorney General does not dispute, that his conviction for violating Health and Safety Code section 11351 constituted an "aggravated felony" that had "no waivers and no recourse under immigration law"—presumably meaning it had specific, mandatory adverse immigration consequences.[5]  As discussed, the plea form signed by Lucero informed him only that his conviction "may" result in specified adverse immigration consequences, echoing the language in Penal Code section 1016.5, subdivision (a)—an inadequate advisement if the conviction will result in mandatory deportation, permanent exclusion or denial

---

[5]    Nothing in the record indicated Lucero's immigration status either in 2003 when he entered his plea or in 2021 when he filed his motion under section 1473.7.

9

of naturalization.  (*Vivar, supra*, 11 Cal.5th at p. 521; *People v. Lopez, supra*, 83 Cal.App.5th at p. 716.)  However, the minute order following the plea hearing stated Lucero had been orally advised the conviction "will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization"; and the transcript of that hearing, available to the court at the section 1473.7 hearing, indicated he was assisted by a Spanish-language interpreter when the advisement was given.  Lucero does not contest the accuracy of that description of the plea hearing.

That said, Lucero in his declaration in support of the motion stated his plea attorney did not advise him of any immigration consequences.  (This stands in contrast to cases in which defense counsel actually misadvised the client, as was apparently true, for example, in *People v. Manzanilla, supra*, 80 Cal.App.5th at page 906 ["[c]ounsel's advice was deficient for lack of specificity despite clear law establishing that Manzanilla's removal was virtually certain"].)  In court, however, Lucero retreated somewhat from that unequivocal assertion, testifying only that he did not remember counsel telling him about the immigration consequences of his plea.

Although not expressly required by the language of section 1473.7, evolving case law suggests the absence of specific, independent immigration advice by defense counsel, even though the defendant was told by the court or prosecutor of mandatory immigration consequences when his or her plea was taken, constitutes error, leaving only the question whether that error was prejudicial.  (See, e.g., *People v. Manzanilla, supra*, 80 Cal.App.5th at p. 906; *People v. Lopez* (2021) 66 Cal.App.5th 561, 577; see also *People v. Patterson* (2017) 2 Cal.5th 885, 896

["[o]ne of the purposes of the [Penal Code] section 1016.5 advisement is to enable the defendant to seek advice from counsel about the actual risk of adverse immigration consequences"].) Accepting that as the correct interpretation of the statute—an issue we need not decide in this case—Lucero's declaration that he received no immigration advice from his lawyer and his testimony that he did not recall receiving any such advice would appear to be sufficient to establish error, particularly since the superior court made no finding adverse to Lucero on this point.

b. *Did Lucero understand the advisements?*

In Lucero's motion to vacate his conviction under section 1473.7 and the supporting legal memorandum, retained counsel repeatedly stated Lucero did not meaningfully understand the immigration consequences of his plea. Significantly, however, in his 10-paragraph declaration, presumably prepared with the assistance of counsel, Lucero did not make a similar assertion. Moreover, when testifying at the evidentiary hearing on the motion, Lucero never claimed he did not understand the immigration consequences of entering a guilty plea, even though the court at the outset of the hearing stated he had been orally advised about those immigration effects and the January 3, 2003 minute order stated that advice had been that adverse immigration consequences were mandatory. Unless we were to assume, which we are not prepared to do, that the absence of advice by defense counsel necessarily means— without any specific claim by the moving party or any other, further showing—the defendant did not understand the court's or prosecutor's advisement that the plea will result in mandatory immigration consequences, Lucero has failed to prove by a preponderance of the evidence this necessary element for relief

11

under section 1473.7, subdivision (a)(1).  That is, exercising our independent judgment, the facts do not satisfy the requirements of the law.  (See *Vivar*, *supra*, 11 Cal.5th at p. 527.)

>    c.  *Would Lucero have rejected the plea agreement had he understood the immigration consequences?*

After reviewing Lucero's declaration and listening to his testimony, the superior court found there was no credible evidence Lucero would have rejected the plea agreement— probation with 90 days of county jail time less 33 days of custody credit rather than facing a possible four-year maximum state prison sentence—if defense counsel had specifically advised him of the mandatory adverse immigration consequences of the plea. Indeed, there was no evidence at all on this point, credible or otherwise.  To reiterate, neither in his declaration nor in his testimony did Lucero claim that immigration consequences were a significant concern of his in 2003, let alone that he would not have accepted the plea had he understood the effect his conviction for violating Health and Safety Code section 11351 would have on his immigration status.  On this record, giving "particular deference to factual findings based on the trial court's personal observations of witnesses" as mandated by the Supreme Court in *Vivar*, *supra*, 11 Cal.5th at pages 527 to 528, it would be impossible to conclude Lucero carried his burden to prove prejudicial error by a preponderance of the evidence.

Moreover, even if Lucero had made a claim of prejudice, he fell far short of corroborating any such assertion with objective evidence, as required by *Espinoza* and *Vivar*.  (See *Espinoza*, *supra*, 14 Cal.5th at p. 321 ["[a] defendant must provide "'objective evidence'" to corroborate factual assertions"]; *Vivar*, *supra*, 11 Cal.5th at p. 530 ["[w]hen a defendant seeks to

12

withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with "'objective evidence'""]; cf. *People v. Martinez* (2013) 57 Cal.4th 555, 565 [To be entitled to relief under Penal Code section 1016.5, "the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised.  It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances"].)

In his declaration Lucero explained he emigrated from Mexico in 1994 when he was 17 years old and stated, since that time, he had always considered this country his home.  However, he provided no information about any ties to the United States other than physical presence between 1994 and 2003 when he entered his guilty plea and his work in this country as a handyman and in construction.  In particular, although Lucero declared he married in 2013 and now has four children with his wife, he identified no relatives or extended family members (or even close friends) living in the United States in 2003, as, for example, did Vivar, who presented evidence he came to the United States when only six years old and, at the time of his offense, had lived here for 40 years and had a wife, two children (one then serving in the United States Air Force) and two grandchildren, all of whom were citizens.  (See *Vivar*, *supra*, 11 Cal.5th at p. 530.)  Similarly, in support of his section 1473.7 motion Espinoza submitted evidence regarding his biographical history and ties to the United States, which revealed at the time of his plea he had lived in California for 23 years (he came to this country when he was 13 years old); he was a lawful permanent

13

resident; his wife and five children were United States citizens; and his parents and siblings lived in the United States. (*Espinoza*, *supra*, 14 Cal.5th at p. 317; see *id*. at p. 322 ["Espinoza's deep and long-standing ties are undisputed and weigh in favor of finding that he would have considered immigration consequences to be of paramount concern in deciding whether to accept a plea agreement"]; see also *People v. Manzanilla*, *supra*, 80 Cal.App.5th at p. 912 ["[A]t the time of his plea, Manzanilla had been in the United States since 1965, when he arrived as a four-year-old child, so had called the United States home for approximately 55 years.  He went to school and started a family in California, and his family members, including his United States citizen minor children, are in the United States"]; *People v. Diaz (*2022) 76 Cal.App.5th 102, 115, review granted June 15, 2022, S274129 [separating the defendant from his mother and from the country where he had spent two-thirds of his life were "compelling reasons" for him to wish to remain legally in the United States].)

Nor did Lucero describe his family situation in, or relationship to, Mexico, eschewing any suggestion he would be an uncomfortable stranger in an unfamiliar country if he had to leave the United States.  (See *People v. Lopez*, *supra*, 83 Cal.App.5th at p. 714 ["[the] factors courts may consider in determining the reasonable probability that the defendant would have rejected the plea because of immigration consequences include: the defendant's remaining ties or lack thereof to his or her home country"]; *People v. Manzanilla, supra*, 80 Cal.App.5th at p. 912 [same]; cf. *Vivar*, *supra*, 11 Cal.5th at p. 530 ["Vivar had virtually no ties to Mexico, spoke Spanish 'like an American,' and

14

found it 'difficult to function in Mexican society because people treat [him] like an outsider'"].)

As discussed, the record is also devoid of evidence that immigration consequences were of any concern to Lucero in 2003 (and certainly not his primary concern) even though the written and oral advisements alerted him to the potential immigration issues that flowed from being arrested for possession of cocaine. Lucero's counsel argues a plea to simple possession of cocaine, an immigration-neutral conviction, with diversion rather than jail time, could have been pursued if Lucero had been properly advised, but no evidence was offered in the superior court that suggested such a plea was reasonably possible or would even have been considered by the prosecutor.

In sum, viewing the totality of the circumstances, as instructed by *Vivar*, even if Lucero did not receive proper advisements, the superior court properly determined he failed to present sufficient evidence to carry his burden of establishing a reasonable probability he would not have entered into the plea agreement if he had meaningfully understood the associated adverse immigration consequences.

## DISPOSITION

The postjudgment order denying Lucero's section 1473.7 motion is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J.

15